UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| THE STATE OF NORTH DAKOTA, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>THE UNITED STATES DEPARTMENT OF INTERIOR, *et al.*,<br><br>    Defendants. | No. 1:24-cv-124-DMT-CRH<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER THIS CASE TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

Pursuant to D.N.D. Civ. L.R. 7.1(B), Defendants submit this Memorandum in Support of their Motion to Transfer this Case to the United States District Court for the District of Utah. Plaintiffs, the states of North Dakota, Idaho, and Montana, challenge the Bureau of Land Management's ("BLM") promulgation of the "Conservation and Landscape Health" rule. 89 Fed. Reg. 40,308 (May 9, 2024) (Rule). Defendants seek to transfer this case to the District of Utah, where a related case challenging the same rule was filed first. Transfer would serve the interest of justice for at least three reasons: by (1) conserving scarce judicial, state, and federal government resources; (2) avoiding the substantial potential for conflicting judgments; and (3) allowing the forum with a far greater underlying interest in the litigation to decide the case. Transfer is warranted here because the Utah case was filed first, a preliminary injunction proceeding is underway in that court, and Utah contains 400 times more land potentially subject to the Rule than does North Dakota, and therefore has a far greater underlying interest in the litigation.

1

**BACKGROUND**

BLM promulgated the Rule on May 9, 2024, with an effective date of July 10. 89 Fed. Reg. 40,308 (May 9, 2024). The Rule "establishes the policy for the BLM to build and maintain the resilience of ecosystems on public lands in three primary ways: (1) protecting the most intact, functioning landscapes; (2) restoring degraded habitat and ecosystems; and (3) using science and data as the foundation for management decisions across all plans and programs." *Id*. The Rule achieves its aims through a variety of administrative and procedural mechanisms and tools. *See, e.g.*, 43 C.F.R. § 1610.7-2 (procedures for designating areas of critical environmental concern); *id.* § 6102.2 (procedures to facilitate protection of intact landscapes); *id.* § 6102.3.1 (procedures for prioritizing areas for restoration); *id* § 6102.4 (procedures for issuing restoration and mitigation leases); *id.* § 6103.1.2 (procedures for assessing land health); *id.* § 6103.2 (procedures for inventorying, assessing, and monitoring resource conditions). Notably, implementation of Part 6100, which represents a vast majority of the Rule, will be limited to BLM-managed surface estate and would not apply at all to lands where BLM only manages the mineral estate. *Id.* § 6101.4(u) (definition of *public lands*). And even the one aspect of the Rule that is not formally limited to BLM-managed surface estate—the revision to the planning regulation that governs designation of areas of critical environmental concern (ACECs)—would be highly unlikely to bear on lands where BLM manages only the mineral estate based on past practice. *See* Bernier Decl. ¶¶ 3-5, attached as Exhibit 1. As of fiscal year 2023, there were 1,179 ACECs designated on BLM-managed lands, and since BLM first began designated ACECs in 1980, BLM has never designated an ACEC on mineral estate where it does not manage the surface. Bernier Decl. ¶¶ 3-5.

On June 18, Utah and Wyoming challenged the final rule in the District of Utah, where the case has been assigned to Judge David Barlow. *State of Utah v. Haaland*, Case No. 2:24-CV-00438, Dkt. 1 (D. Utah) (Utah Compl.). Those plaintiffs allege that BLM's reliance on a categorical exclusion violated the National Environmental Policy Act (NEPA).

On June 21, North Dakota, Idaho, and Montana challenged the final rule in the District of North Dakota. As in the first-filed case, these new Plaintiffs allege that BLM violated NEPA by relying on a categorical exclusion rather than preparing an environmental assessment or environmental impact statement. The new Plaintiffs also allege violations of the Federal Land Policy and Management Act (FLPMA), the Congressional Review Act (CRA), the Administrative Procedure Act (APA), and the Mineral Leasing Act (MLA).[1]

**LEGAL STANDARD**

"Section 1404(a) governs the ability of a federal district court to transfer a case to another district." *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). This provision reads: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought…." 28 U.S.C. § 1404(a).

A motion to transfer therefore involves a two-step analysis. The Court must first ask "whether the action may have been brought in the proposed transferee district." *Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC*, 124 F. Supp. 3d 878, 883 (D. Minn. 2015) (quoting *Valspar Corp. v. Kronos Worldwide, Inc.,* 50 F. Supp. 3d 1152, 1155 (D. Minn. 2014)).

---

[1] Various trade organizations have since filed a third lawsuit challenging the Rule in the District of Wyoming. *American Farm Bureau Fed'n, et al. v. U.S. Dep't of the Interior*, No. 2:24-CV-136 (D. Wy. July 12, 2024). They similarly allege violations of NEPA, FLPMA, the CRA, and the APA. *Id.*, Dkt. 1.

"If so, the Court must then consider the convenience and interest of justice factors." *Id*. "A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Because the Eighth Circuit has "declined to offer an exhaustive list of specific factors to consider in making the transfer decision," "district courts should weigh any 'case-specific factors' relevant to convenience and fairness to determine whether transfer is warranted." *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010) (quotation marks and citation omitted); *see also Travelers Prop. Cas. Co. of Am. v. Hayashi*, No. 1:22-CV-00210, 2023 WL 7308450, at *4 (D.N.D. Oct. 10, 2023) (noting that transfer motions require "a case-by-case evaluation of the particular circumstances" (quoting *R.D. Offutt Co. v. Lexington Ins. Co.*, 342 F. Supp. 2d 838, 841 (D.N.D. 2004))).

"The plaintiff's choice of forum is entitled to 'some weight' in the analysis, and the burden rests with the movant to overcome that weight by showing (1) the parties' private interests and (2) other public-interest considerations militate in favor of transfer." *Valspar Corp. v. E.I. DuPont de Nemours & Co.*, 15 F. Supp. 3d 928, 931 (D. Minn. 2014) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 n.6 (2013)).

## ARGUMENT

**I.     Plaintiffs could have brought this case in the District of Utah.**

"Section 1404(a) limits transfer of a civil action to 'any other district or division where it might have been brought.'" *Am. Standard, Inc. v. Bendix Corp.*, 487 F. Supp. 254, 261 (W.D. Mo. 1980) (quoting 28 U.S.C. § 1404(a)). Under 28 U.S.C. § 1391(e), a civil action against an official or agency of the United States may be brought in any judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part

4

of property that is the subject of the action is situated." 28 U.S.C. § 1391(e)(1)(B). This action could have been brought in the District of Utah because, as Plaintiffs in the first-filed Utah litigation note, "a substantial part of the events or omissions giving rise to the claim took place in Utah, and the State of Utah contains 22.8 million acres of public lands managed by the BLM that are subject to and affected by the Public Lands Rule." Utah Compl. ¶ 9. Accordingly, venue is proper in the District of Utah.

II. **Transferring the case to the District of Utah would serve the interests of justice.**

"The interests of justice factor is considered to be the most important factor in the analysis." *W. Energy All. v. U.S. Dep't of the Interior*, No. 1:16-CV-112, 2016 WL 11889030, at *3 (D.N.D. Dec. 19, 2016); *accord United HealthCare Servs., Inc. v. Celgene Corp.*, No. 20-cv-686-DSD-ECW, 2020 WL 7074626, at *3 (D. Minn. Dec. 3, 2020); *Radisson Hotels Int'l v. Westin Hotel Co.*, 931 F. Supp. 639, 641 (D. Minn. 1996). Indeed, "[t]he interest of justice factor may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Bhd. of Maint. of Way Employees Div./IBT v. Union Pac. R.R. Co.*, 485 F. Supp. 3d 1048, 1062 (D. Neb. 2020) (cleaned up) ("Courts weigh the interest of justice factor very heavily." (citation omitted)).

A transfer of venue to the District of Utah where another action is already pending would serve the interests of justice in this case. "When considering the interest of justice, a court can consider: (1) judicial economy; (2) the plaintiff's choice of forum; (3) the comparative costs to the parties of litigating in each forum; (4) each party's ability to enforce a judgment; (5) obstacles to a fair trial; (6) conflict of law issues; and (7) the advantage of having a local court determine questions of local law." *R.D. Offutt Co,* 342 F. Supp. 2d at 843 (citing *Terra Int'l, Inc.,* 119 F.3d at 696). The first two factors are of primary relevance to this case, as it is brought under

the Administrative Procedure Act ("APA"). *City of W. Palm Beach v. U.S. Army Corps of Engineers*, 317 F. Supp. 3d 150, 156 (D.D.C. 2018) (transferring an APA challenge to the district with the strongest interest in the outcome of the case, despite plaintiff's choice of another forum).

First, because the Utah case was filed first and Defendants seek to consolidate this and other cases challenging the Rule in Utah, the judicial-economy factor favors transferring the case to that district. *See Villeda v. Inland Marine Serv.*, No. 20-cv-1412 (WMW/DTS), 2021 U.S. Dist. LEXIS 57530, at *8-9 (D. Minn. Mar. 26, 2021) (finding that "although the first-to-file rule does not *require* transfer, the similarity of the cases *favors* transfer"); *Bartolucci v. 1-800 Contacts, Inc.*, 245 F. Supp. 3d 38, 47 (D.D.C. 2017) ("Here, two similar cases are currently pending in the District of Utah, and transfer . . . will serve the interests of judicial economy."); *Italian Colors Rest. v. Am. Express Co.*, No. 03-3719, 2003 U.S. Dist. LEXIS 20338, at **10-11 (N.D. Cal. Nov. 7, 2003) (noting that a similar action was already pending in the proposed transferee forum and finding that plaintiffs had engaged in forum-shopping). Here, both cases challenge the same rule, present overlapping claims, and will be reviewed on the same administrative record. *See* Civil Cover Sheet, ECF No. 1-4 (denoting the Utah case as a related case). And, because Defendants would seek to consolidate these two cases, transferring this case to the first-filed district would offer "efficiency to the litigation" and "avoid[] needless expenses." *Villeda*, 2021 U.S. Dist. LEXIS 57530, at *8-9.

"[T]he existence of a related action in the transferee district weighs heavily in favor of transfer when considering judicial economy and the interests of justice." *Brown v. New York*, 947 F. Supp. 2d 317, 326 (E.D.N.Y. 2013) (quotation marks and citation omitted). Courts in this Circuit regularly transfer cases to forums where a related action is already pending. *E.g.*, *W.*

*Energy All.*, 2016 WL 11889030, at \*4 (transferring case because "it makes little sense to have multiple district courts address similar claims . . . when a single court could hear all claims"); *Herschbach v. Herschbach*, 667 F. Supp. 2d 1080, 1089 (D.N.D. 2009) (transferring case, even though mineral estates at issue were located in North Dakota, to avoid "duplicative effort, waste of judicial resources, and unnecessary expenses"). Transfer is additionally warranted here because the plaintiffs in the Utah case filed a motion for a preliminary injunction on July 11, thereby accelerating the likely timeframe on which that case will be decided. *See State of Utah*, No. 2:24-CV-00438, Dkt. 18.

Second, denying transfer, by contrast, would frustrate the interests of justice by increasing the "potential for conflicting judgments." *W. Energy All.*, 2016 WL 11889030, at \*3. By choosing to litigate in a different forum, Plaintiffs create a risk that the two courts will reach inconsistent conclusions when resolving the legal questions common to both cases. *See W. Energy All.*, 2016 WL 11889030, at \*3; *Valspar Corp.*, 50 F. Supp. 3d at 1157 ("trying the claims . . . in one venue eliminates the possibility of inconsistent verdicts on those claims"). Denying transfer would also needlessly contribute to the congestion of the federal courts. *See W. Energy All.*, 2016 WL 11889030, at \*4 ("In choosing to file in North Dakota, the Plaintiffs contributed to the proliferation of cases challenging the Plan Amendment in multiple federal courts.").

Even where a plaintiff chooses its home forum, the "deference [owed to that choice] does not override the considerations of judicial economy" implicated by litigating substantially similar issues in two courts rather than one. *Celgene Corp.*, 2020 WL 7074626, at \*4. "The plaintiff's choice of forum is . . . entitled to less deference where a related action is pending in a different forum[,] the action in the prospective transferee court was filed first and the subject matters of

the two suits are very closely related." *Buckeye Pennsauken Terminal LLC v. Dominique Trading Corp.*, 150 F. Supp. 3d 501, 509 (E.D. Pa. 2015). Thus, this Court has transferred APA challenges to other forums already presiding over related challenges, even when a plaintiff resided in this District. *W. Energy All.,* 2016 WL 11889030, at *4 (according plaintiffs' choice of forum "little deference" even though North Dakota Petroleum Council was a plaintiff).

Third, the District of North Dakota's interest in this suit is minimal compared to that of the District of Utah. There is a public interest in having challenges to agency rules impacting public lands heard "in the geographic region most directly impacted by the court's decision." *W. Energy All.*, 2016 WL 11889030, at *5. Utah contains roughly 400 times more land area that is subject to the Rule than does North Dakota. More specifically, BLM manages 22.8 million acres of surface lands in Utah, or roughly 42% of the state.[2] In comparison, BLM manages only 58,000 acres of surface lands in North Dakota, or roughly 0.13% of the State.[3] And while Plaintiffs allege harm from impacts to federally managed mineral estate lands in North Dakota, Part 6100 on its face applies only to surface estate lands. *Compare* 89 Fed. Reg. 40,319 (May 9, 2024) (defining "public lands" under the rule as extending only to BLM-managed surface estate); *with* Compl. ¶ 74, ECF No. 1 (alleging harm from the fact that "BLM manages approximately 4 million acres of *mineral interests* in North Dakota," and alleging that "Federal *mineral interests* are present in over 30% of the spacing units in North Dakota." (emphasis added)); *see also* Compl. ¶ 76 (incorrectly alleging that "the Final Rule's creation of mitigation and restoration 'leases' on sparse *federal mineral interests* will thereby unlawfully block the development of surrounding State and private mineral interests that are subject to communitization or pooling

---

[2] *See* https://www.blm.gov/programs/energy-and-minerals/mining-and-minerals/about/utah.
[3] *See* https://www.blm.gov/office/north-dakota-field-office.

agreements" (emphasis added)). North Dakota's attempt to tie their alleged injury to federal mineral estate lands and its impact on communitized or pooled agreements does not withstand scrutiny because the Rule applies to surface estate lands.[4] In sum, in the interests of justice, the Court should transfer this matter to the District of Utah.

**III.    The other § 1404(a) factors weigh in favor of transfer.**

The convenience of the parties and witnesses will be best served by a transfer. As these cases are brought under the APA and will be decided on an administrative record, neither court is located nearer to sources of proof or witnesses. Should an evidentiary hearing become necessary, however, Utah would be centrally located for most parties, including BLM, whose Western Headquarters are in Grand Junction, Colorado. It is also closer to Plaintiff Idaho than North Dakota. Similarly, lead counsel for Plaintiffs and co-counsel for Defendants are located in Denver, Colorado, which is closer to Utah than to North Dakota. The convenience factors therefore weigh in favor of transfer. *See City of W. Palm Beach*, 317 F. Supp. 3d. at 155 (Plaintiff's attorney's location was a factor weighing in favor of transfer); *W. Energy All.*, 2016 WL 11889030, at *4 (transferring case from this District where both counsel for Plaintiffs and counsel for Defendants were located in Denver, Colorado).

## CONCLUSION

The interest of justice weighs strongly in favor of a transfer. The District of Utah has a pending case challenging the same Rule and a greater interest in the litigation. A transfer would preserve scarce judicial, state, and federal resources and prevent the complications arising from

---

[4] As noted above, the fact that the planning regulation for the designation of ACECs, which the Rule revises, could theoretically apply to areas where BLM only manages the mineral estate does not mean that the Rule as a practical matter is likely to affect those areas. The BLM has never designated an ACEC in such areas. *See* Bernier Decl. ¶ 5.

9

potentially inconsistent judgments on a nationwide rule, all while permitting the Utah court to opine on regulations that affect the 22.8 million acres of federal surface estate in Utah.

Respectfully submitted this 22nd day of July, 2024.

> TODD KIM
> Assistant Attorney General
> Environment & Natural Resources Division
> United States Department of Justice
>
> */s/ Shannon Boylan*
> SHANNON BOYLAN
> Trial Attorney
> United States Department of Justice
> Environment and Natural Resources Division
> 150 M St NE
> Washington, D.C. 20002
> Tel: (202) 598-9584 / Fax: (202) 305-0506
> shannon.boylan@usdoj.gov
>
> LUTHER L. HAJEK
> Trial Attorney
> United States Department of Justice
> Environment and Natural Resources Division
> 999 18th St.
> South Terrace – Suite 370
> Denver, CO 80202
> Tel: 303-844-1376 / Fax: 303-844-1350
> luke.hajek@usdoj.gov
>
> *Attorneys for Defendants*