## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA
## WESTERN DIVISION

| | | |
|---|---|---|
| STATE OF NORTH DAKOTA, | ) | |
| STATE OF IDAHO, and | ) | |
| STATE OF MONTANA, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 1:24-cv-124-DMT-CRH |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES DEPARTMENT OF | ) | |
| INTERIOR; | ) | |
| DEBRA ANN HAALAND, in her official | ) | |
| capacity as Secretary of Interior; | ) | |
| THE BUREAU OF LAND MANAGEMENT; | ) | |
| and | ) | |
| TRACY STONE MANNING, in her official | ) | |
| capacity as the Director of the Bureau of Land | ) | |
| Management, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER THIS CASE TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

The States of North Dakota, Idaho, and Montana (Plaintiff States) respectfully submit this opposition to Defendants', the United States Department of Interior, Debra Ann Haaland, the Bureau of Land Management (BLM or Agency), and Tracy Stone Manning (collectively Defendants), motion to transfer this case to the United States District Court for the District of Utah and the memorandum in support (ECF No. 5-1) (Transfer Motion).

Plaintiff States seek judicial review of a rule promulgated by BLM entitled "Conservation and Landscape Health." 89 Fed. Reg. 40,308 (May 9, 2024) (Final Rule). Plaintiff States' Complaint is based on the legal wrongs and economic harms imposed on the Plaintiff States and

their citizens by that Final Rule, including harms to Plaintiff States' sovereign authority over State-owned and privately-owned minerals and other natural resources.

Defendants seek to upset Plaintiff States' choice of forum and transfer this case to the District of Utah because a different challenge to the Final Rule was filed in that forum by the States of Utah and Wyoming.  The States of Utah and Wyoming filed their Complaint on June 18th and Plaintiff States in this action filed their Complaint on June 21st.  However, Utah and Wyoming's challenge is much narrower than the challenge made by Plaintiff States in this action, focusing solely on allegations that Defendants violated the National Environmental Policy Act (NEPA) by failing to conduct an adequate environmental assessment before promulgating the Final Rule.  *See generally Utah et al. v. Haaland, et. al*, No. 2:24-cv-00438, Dkt. No. 1 (D. Utah Jun. 18, 2024) (Utah Complaint).  For Plaintiff States in this action, however, NEPA is merely Count III of a five-count complaint, and Plaintiff States here also allege the Final Rule violates the Federal Land Policy Management Act (FLPMA), the Congressional Review Act (CRA), the Mineral Leasing Act (MLA), and that it violated the Administrative Procedure Act (APA) by failing to adequately consider costs and reliance interests.  *See generally* ECF No. 1 (Compl.).

For several reasons, Defendants have not met their heavy burden to override Plaintiff States' selection of this Court as the forum for challenging the Final Rule.  First, Plaintiff States could not have brought this claim in Utah, since none of the injuries to Plaintiff States that are alleged in this action occurred in Utah.  And second, Defendants have not shown that the balance of equitable factors favors transfer.  Plaintiff States' arguments against the Final Rule are much broader and quite different from the single and narrow claim being made in the Utah case, and, regardless, it is not unusual for State-specific challenges to Federal regulations to be entertained in several Federal courts concurrently.

Defendants' Transfer Motion should be denied.  But in the alternative, if the Court is inclined to transfer any part of Plaintiff States' claims to the District of Utah, only the NEPA claim should be severed and transferred to that court, and all other claims should remain in this forum.

## LEGAL STANDARD

Motions to transfer venue are governed by 28 U.S.C. § 1404(a), which states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  The first step requires a court to determine whether the action "might have been brought" in the proposed transferee forum.  *See, e.g.*, *Hoffman v. Blaski,* 363 U.S. 335, 343-344 (1960).

If the action could have been brought in the other forum, the second step involves whether "convenience of parties and witnesses" and "the interest of justice" favor a transfer.  28 U.S.C. § 1404(a).  "[F]ederal courts give considerable deference to a plaintiff's choice of forum."  *In re Apple, Inc.,* 602 F.3d 909, 912-913 (8th Cir. 2010) (citation omitted).  "'[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'"  *R.D. Offutt Co. v. Lexington Ins. Co.*, 342 F. Supp. 2d 838, 841 (D.N.D. 2004) (quoting *Gulf Oil Corp. v Gilbert*, 330 U.S. 501, 508 (1947)).

"The moving party bears the 'heavy burden of showing that the balance of factors favors' a transfer.  *Dakota W. Bank of North Dakota v. N. Am. Nutrition Co*., 284 F. Supp. 2d 1232, 1234 (D.N.D. 2003) (citation omitted).  "That burden may not be met simply by showing that the factors are evenly balanced or weigh only slightly in favor of transfer."  *Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC*, 124 F. Supp. 3d 878, 884 (D. Minn. 2015).  "Courts generally will not grant a

transfer if 'the effect is simply to shift the inconvenience to the party resisting the transfer.'" *Dakota W. Bank*, 284 F. Supp. 2d at 1234 (citation omitted).

In this case, far from meeting the heavy burden for a transfer, all the relevant factors weigh against granting Defendants' Transfer Motion.

## ARGUMENT

Plaintiff States could not have brought this action in the District of Utah.  But even if they could have, Defendants have not met their heavy burden for overturning Plaintiff States' choice of forum.  To the contrary, even though the burden is not on the Plaintiff States, the balance of the relevant factors ***favors*** Plaintiff States' choice of forum for this action.

### I.   **Plaintiffs States' Claims Could Not Have Properly Been Brought in Utah.**

Defendants cite 28 U.S.C. § 1391(e) for their contention that Plaintiff States in this action could have filed this lawsuit in the District of Utah because "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" is situated in Utah.  Transfer Mot. at 4-5 (quoting 28 U.S.C. § 1391(e)(1)(B)).

However, none of Plaintiff States' alleged injuries in this action involve any land situated in Utah, nor any events or omissions taking place in Utah.  *See* Compl.

In reviewing Section 1391(e), the Supreme Court has stated that "Congress intended nothing more than to provide nationwide venue *for the convenience of individual plaintiffs* in actions which are nominally against an individual officer but are in reality against the Government." *Stafford v. Briggs*, 444 U.S. 527, 542 (1980) (emphasis added); *id.* at 539-40 (reviewing H.R.Rep.No. 1936, 86th Cong., 2d Sess., 3–4 (1960), which stated that the purpose of Section 1391(e) was "to make it possible to bring actions against Government officials and agencies in U. S. district courts outside the District of Columbia, which, because of certain existing

4

limitations on jurisdiction and venue, may now be brought only in the U. S. District Court for the District of Columbia.").   Here, Plaintiff States' claims have no ties to Utah.  These claims will be resolved based on statutory interpretation, BLM's administrative record for promulgating the Final Rule, and the impacts of the Final Rule on natural resources in Plaintiff States.

For the allegations and injuries that are at issue in this action, the only judicial districts "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" is either in one the Plaintiff States or in the District of Columbia, where BLM is headquartered.   Defendants cite no authority whatsoever for the proposition that Plaintiff States could have picked out any State in the country with federal lands and then brought suit in a district court there.  *C.f., e.g.*, *Kansas et al. v. Garland*, No. 2:24-cv-000888, ECF No. 75 (Order) (E.D. Ark. May 23, 2024) (transferring multistate action out of Arkansas where the State of Arkansas was dismissed for lack of standing, as "[b]ecause no Plaintiff with standing resides in this district, venue is improper").

Defendants' Transfer Motion consequently fails the first step of the transfer analysis.

## II.   Defendants Have Not Met Their Heavy Burden to Show Plaintiffs States' Challenge Favors Transfer.

But even assuming Plaintiff States' action could have been brought in the District of Utah, Defendants have failed to meet their "'heavy burden of showing that the balance of factors favors' a transfer." *Dakota W. Bank of North Dakota*, 284 F. Supp. 2d at 1234 (citation omitted).

### A.  The Convenience of the Witnesses Weighs Against Transfer.

"Generally, the factor given the most weight[] by courts considering a motion for change of venue is the convenience of the witnesses." *R.D. Offutt Co.*, 342 F. Supp. 2d at 842; *see also Dakota W. Bank of North Dakota*, 284 F. Supp. 2d at 1235 (similar); *MBI Energy Servs. v. Hoch*, 2017 WL 2986371, *2 (D.N.D. Feb. 28, 2017) (similar).

5

Defendants claim that "neither court is located nearer to sources of proof or witnesses." Transfer Mot. at 9.   However, for two of three Plaintiff States—including lead Plaintiff State of North Dakota—Plaintiffs States' chosen venue of the District of North Dakota is closer than the District of Utah and will be more convenient for witnesses if evidentiary hearings are held.

Further, if Defendants plan to present witnesses in this action, then they will have to travel regardless.  There is little substantive difference between travel from Washington, D.C. (where some of Defendants' counsel and BLM's headquarters are located) or Grand Junction, Colorado (where BLM's Western Headquarters and one counsel are located) to either North Dakota or Utah.[1] Similarly, potential witnesses from the Plaintiff States of Idaho and Montana will have to travel regardless of which forum is eventually chosen, and Plaintiff States are "generally presumed to have chosen the forum because it is convenient."  *R.D. Offutt Co.*, 342 F. Supp. 2d at 842.

The convenience of witnesses factor thus favors Plaintiff States' chosen forum.

### B.  The Interests of Justice Factors Favor Denying Transfer.

"When considering the interest of justice, a court can consider: (1) judicial economy; (2) the plaintiff's choice of forum; (3) the comparative costs to the parties of litigating in each forum; (4) each party's ability to enforce a judgment; (5) obstacles to a fair trial; (6) conflict of law issues; and (7) the advantage of having a local court determine questions of local law."  *R.D. Offutt Co.*, 342 F. Supp. 2d at 843.  The balance of these factors again favors Plaintiff States' choice of forum.

### 1.  The Plaintiff's Choice of Forum.

Given the "considerable deference to a plaintiff's choice of forum", this factor weighs heavily in favor of Plaintiff States.  *In re Apple, Inc.,* 602 F.3d at 912-913.  Defendants' assertion

---

[1] North Dakota is physically closer to Washington, D.C. than Utah, whereas Utah is physically closer to Grand Junction, Colorado.

that Utah has a "greater interest" in this litigation (*e.g.*, Transfer Mot. at 9) is contradicted by Plaintiff States' voluntary and express decision to initiate this action in North Dakota—an explicit acknowledgment that North Dakota is Plaintiff States' preferred forum.

### 2. Judicial Economy.

Defendants' argument that judicial economy will be served by a change of venue because the District of Utah is presiding over a first-filed challenge involving a *single* overlapping claim for relief (*see* Transfer Mot. at 3, 6-7) should be rejected.

As an initial matter, the "first-to-file rule" only applies "when both actions involve the same parties and *the same issues*." *See Villeda v. Inland Marine Serv.*, 2021 WL 1153247, *3 (D. Minn. Mar. 26, 2021) (citing *Orthmann v. Apple River Campground, Inc*., 765 F.2d 119, 121 (8th Cir. 1985) (emphasis added). Here, it is undisputed that Plaintiff States' action involves different plaintiffs, and that Plaintiff States' Complaint raises claims under FLPMA, the Congressional Review Act, the MLA, and the APA that are not raised in the Utah case.

Transferring this action to the District Court of Utah would thereby fundamentally change the nature of that action and require the Utah Court to undertake separate analyses for four different causes of action that are not currently before it, complicating litigation where the plaintiff States in that action chose to bring only NEPA-related claims.

For example, Plaintiff States' first claim for relief under FLPMA requires a reviewing court to analyze the substantive requirements of FLPMA as they relate to the Final Rule, an issue not raised in the Utah action. Compl. at ¶¶ 84-91. Similarly, Plaintiff States' second claim for relief under the Congressional Review Act requires an analysis of the prior BLM 2.0 Planning Rule that was rejected under the Congressional Review Act as compared to the Final Rule. Compl. at ¶¶ 92-95. Plaintiff States' fourth claim for relief under the APA requires an arbitrary and capricious

analysis distinct from that at issue in the Utah action.  *Compare* Compl. at ¶¶ 103-106 (Plaintiff States alleging the Final Rule is arbitrary and capricious for failing to quantify costs and failing to consider reliance interests) *with* Utah Compl. ¶¶ 103-155 (Utah and Wyoming arguing the Final Rule is arbitrary and capricious for failing to conduct an adequate environmental analysis of the impacts of the Final Rule).  Finally, Plaintiff States' fifth claim for relief under the MLA requires an analysis of the Congressional authorization and limitations on BLM's authority in the MLA. Compl. ¶¶ 107-110.

The Utah action only involves whether BLM failed to adequately assess the environmental impacts of the Final Rule as required by NEPA.  *See* Utah Compl. ¶¶ 103-155.  Transferring Plaintiff States' action to the District of Utah would consequently not enhance judicial efficiency, but would instead burden the Utah Court with several additional claims that plaintiffs there have chosen not to bring, and potentially delay the preliminary injunctive relief briefing ongoing in that court from proceeding timely.  *See Utah et al. v. Haaland, et. al*, No. 2:24-cv-00438, Dkt. No. 18 (D. Utah Jul. 11, 2024) (Utah Motion for Preliminary Injunction).[2]

Secondly, Defendants' comparison of the extent of federal lands in North Dakota and Utah is not relevant.  *See* Transfer Mot. at 8-9.  The outcome of this case does not turn on the extent of federal lands in any of the States; the Final Rule is not more or less unlawful depending on how much federal land there is in any one of the Plaintiff States, and all Plaintiff States allege that they will be injured by the Final Rule.  Further, Utah's and Wyoming's claims revolve around whether NEPA required BLM to conduct more thorough environmental assessments of the Final Rule, and are not specifically tied to lands in Utah.  Contrastingly, Plaintiff States' claims are unique to this

---

[2] To the extent this Court finds that the potentially overlapping NEPA claim between these two actions merits transfer to the District of Utah, it should sever only that single claim and allow Plaintiff States' other claims to remain in this District.  *See* Section III, *infra.*

8

action will require an analysis of split-estate communitized lands in North Dakota, Idaho, and Montana, and the harms the Final Rule would impose on the split-estate land management in Plaintiff States.   Thus, Defendants' comparisons of federal acreage and their attempted characterizations of the relative interests of North Dakota and Utah should be set aside.

But even if this argument was relevant, Defendants misleadingly focus solely on the amount of BLM managed lands in North Dakota as opposed to all Plaintiff States to this action. BLM manages 12 million acres of public lands in Idaho, nearly one-fourth of the State's total land area.[3]  BLM also manages 8.3 million acres of public lands in Montana, North Dakota, and South Dakota, along with 47.2 million acres of federal mineral estates.[4]  These numbers are comparable to the 22.8 million acres of public lands implicated in Utah, and Defendants' claims that Utah has roughly "400 times more land area that is subject to" the Final Rule is misleading.  Transfer Mot.at 8.  Further, Defendants' understate the impact of the Final Rule in North Dakota by focusing solely on Federally-owned surface estates and ignoring the adverse impact of the Final rule on Plaintiff States' split estate tracts and mineral interests that are communitized with Federal interests.   *See* Compl. at ¶ 76.  And in any event, if Defendants were correct that only the forum with the most federal land is the appropriate venue for this case, both the Utah and North Dakota actions would need to be transferred to the District of Alaska, where BLM manages 70 million acres.[5]

Third, because several of Plaintiff States' claims in this action—particularly their claims under FLPMA and the MLA—involve split estates and communitized interests that are specific to each State, "the interests of justice [will be] promoted when a localized controversy is resolved in the region that it impacts."  *Nat'l Wildlife Fed. v. Harvey*, 437 F. Supp. 2d 42, 50 (D.D.C. 2006);

---

[3] *See* https://www.blm.gov/idaho.
[4] *See* https://www.blm.gov/montana-dakotas.
[5] *See* https://www.blm.gov/alaska.

*W. Energy All*., 2016 WL 11889030, at *5 ("[T]here is a public interest in having challenges raised as to a particular sub-region [affected by an agency rule] decided in the geographic region most directly impacted by the court's decision.").  The unique Resource Management Plans that apply locally in each Plaintiff State (and control how split-estate and communitized lands are developed in Plaintiff States) only serve to emphasize the importance of Plaintiff States' challenges being decided locally in this forum.  *See* Compl. at ¶¶ 27-34, 66, 89.  Indeed, given that a significant portion of Plaintiff States' challenge revolves around Defendants' unlawful usurpation of Plaintiff States' sovereign authority to develop State and private mineral interests—not at issue in the Utah action—judicial economy would be better served with this case remaining in this District.

Finally, there is nothing irregular about different States challenging the same Federal rule simultaneously in multiple different forums, according to their own theories of the case. Indeed, one does not need to look very hard to see the common practice of State challenges to agency rulemakings proceeding independently in multiple forums.  For example, as of the date of this filing, various States (either individually or as coalitions) are challenging the Department of Education's recent Title IX rulemaking in no less than seven forums.  *See Arkansas et. al. v. Dep't of Ed., et. al*., No. 4:24-cv-636 (E.D. Mo.) (six States); *Louisiana et al. v. Dep't of Ed. et al*., No. 3:24-cv-563 (W.D. La.) (four States); *Tennessee et. al. v. Cardona et al.*, No. 2:24-cv-72 (E.D. Ky.) (six States); *Texas v. United States et. al*., No. 2:24-cv-86 (N.D. Tex.) (one State); *Kansas et. al*. v. *Dep't of Ed. et al*., No. 5:24-cv-4041 (D. Kan.) (four States); *Oklahoma v. Cardona, et al*., No. 5:24-cv-461 (W.D. Okla.) (one State); *Alabama et al. v. Cardona et al*, No. 7:24-cv-533 (N.D. Ala.) (four States).  And EPA's latest rule regarding the Waters of the United States is being concurrently challenged in at least three forums. *See West Virginia et al. v. EPA et. al*., No. 3:23-

cv-00032 (D.N.D.) (twenty-four States); *Texas et al. v. EPA et. al.*, No. 3:23-cv-00017 (S.D. Tex.) (two States); *Kentucky et al. v. EPA et al.*, No. 3:23-cv-00007 (E.D. Ky.) (one State).

### 3.   The Remaining Five Interest of Justice Factors.

The remaining factors in the interest of justice analysis are all either neutral or weigh in Plaintiff States' favor and do not support transfer.

As to comparative costs, for Plaintiff States Idaho and Montana, and for Defendants, there is a negligible difference in travel costs for travelling to either Utah or North Dakota.  For North Dakota, however, the cost of travelling to the District of Utah would be more than the cost of traveling to this Court.  Other than travel expenses, there would not appear to be any material difference in costs between the two forums.

As for ability to enforce a judgment or obstacles to a fair trial, Defendants make no argument that there is any difference between the District of North Dakota and the District of Utah.

As for risk of conflicting judgments, that risk is minimal because this action involves only one claim (the NEPA claim) that potentially overlaps with the Utah action.

And as for questions of local law, as mentioned *supra*, there are advantages to having this District determine "questions of local law" regarding how split-estate lands are communitized with federal mineral interests in North Dakota, Idaho, and Montana.  This District is familiar with Plaintiff States' mineral land pooling regimes given recent cases in this District involving those issues.  *E.g., North Dakota v. Dep't of Interior, et al.*, No. 1:21-cv-00148 (D.N.D.); *North Dakota, et al. v. Dept. of Interior, et al.*, No. 1:24-cv-66 (D.N.D.).

### C.   The Convenience of the Parties Is in Plaintiff States' Favor.

This factor also favors denying the Transfer Motion.  Plaintiff States' decision to litigate their claims in this District is afforded great deference, and Defendants' gratuitous arguments that

it will be more convenient for Plaintiff States to litigate in Utah (Transfer Mot. at 9) should be rejected.  Plaintiff States are perfectly capable of expressing their own interests.

Plaintiff States have agreed that North Dakota is the proper and convenient forum for their claims, and North Dakota is represented by its office of the Attorney General, which is located in North Dakota.  *Contra* Transfer Mot. at 9.  Plaintiff States' decision on the most appropriate forum for this challenge should not be disturbed based on Defendants' apparent concern over potential inconveniences to Plaintiff States' counsel.  Regardless, "counsel's location carries little weight in the court's analysis."  *City of W. Palm Beach v. U.S. Army Corps of Engineers*, 317 F. Supp. 3d 150, 155 (D.D.C. 2018); *see also Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 69 (D.D.C. 2003) ("Because this action involves an administrative review that the court is likely to determine on the papers, the location of counsel—already given 'little, if any, weight' in transfer determinations— makes no difference here.") (citation omitted).   To the extent the location of parties' respective counsels carries any weight here, transferring this case to Utah will mean that *all* of Plaintiff States' counsel and Defendants' counsel will be forced to travel outside their "home state."

And as for Defendants, North Dakota is closer than Utah when travelling from Washington D.C., but Utah would be closer when travelling from Grand Junction, Colorado.  Either way, Defendants will be required to travel for in-person proceedings in either District.

In sum, all three statutory factors—convenience of witnesses, interests of justice, and convenience of parties—militate for denying the Transfer Motion.

## III.    If the Court Finds Transfer Appropriate, It Should Only Transfer the NEPA Claim to the District of Utah.

"Courts have broad discretion in determining whether to sever claims under [Federal Rule of Civil Procedure] 21."  *W. Energy All. v. U.S. Dep't of Interior*, 2016 WL 11889030, *2 (D.N.D. Dec. 19, 2016).  (citing *Reinholdson v. Minnesota*, 346 F.3d 847, 850 (8th Cir. 2003) and 7 Wright,

Miller & Kane, Federal Practice and Procedure § 1689, at 515–16 (3d ed. 2001)).  "In exercising that broad discretion, courts typically consider the same factors which apply to the 28 U.S.C. § 1404(a) transfer analysis, including judicial economy, efficiency, witness convenience, the location of and access to sources of proof, and the potential for delay."  *Id.*

Defendants heavily cite *W. Energy All.* to support their contention that this case should be transferred to Utah.  *See* Transfer Mot. at 5, 7-9.  However, in *W. Energy All.*, this Court was tasked with determining whether plaintiffs bringing challenges to land management plans across nine sub-regions, including North Dakota, should be transferred.  2016 WL 11889030, at *2.   In response to a sever and transfer motion, the Court chose only to sever and transfer the portions of plaintiffs' claims relating to an existing challenge in another forum, and allowed the claims relating to North Dakota to remain in this District.  *Id.* at *3.  In doing so, the Court found that "[w]hile Plaintiffs' legal theory may be the same for each sub-region, the claims are necessarily distinct, and the records for each sub-region action are different."  *Id.*

As noted *supra*, only Plaintiff States' third claim for relief—that the Final Rule violates NEPA by failing to sufficiently analyze the environmental impacts of the Final Rule—has any potential overlap with the claims brought by Utah and Wyoming in the District of Utah. Transferring Plaintiff States' four other unique claims for relief under FLPMA, the CRA, the APA, and the MLA would fundamentally change the nature of the Utah action and introduce claims that the plaintiff States in that action have chosen not to bring.  Further, given that the plaintiffs in the Utah action have already sought preliminary injunctive relief, adding new claims into that action could introduce delay, reducing judicial efficiency.

Finally, there is no potential for conflicting judgments on the non-NEPA claims for relief, as none of those have been brought in the Utah action.  Contrastingly, if Plaintiff States' claims

involving split estates and communitization agreements were transferred to Utah, there is a risk of

that Court creating conflicting judgments with other cases currently pending in this District

involving consideration of those issues.  *See North Dakota v. Dep't of Interior, et al*., No. 1:21-

cv-00148 (D.N.D.); *North Dakota, et al. v. Dept. of Interior*, *et al.,* No. 1:24-cv-66 (D.N.D.).

## CONCLUSION

Plaintiff States respectfully request that the Court deny Defendants' Motion to Transfer in

its entirety and allow this action to proceed in Plaintiff States' chosen venue.  However, if this

Court sees fit to transfer part of Plaintiff States' claims to the District of Utah, it should only

transfer Plaintiff States' NEPA-related claim for relief (Count III), and it should permit Plaintiff

States' First, Second, Fourth, and Fifth claims for relief to remain in this District.


Dated: July 31, 2024


DREW H. WRIGLEY
Attorney General

/s/ *Paul M. Seby*
PAUL M. SEBY
Special Assistant Attorney General
1144 15th St, Suite 3300
Denver, CO 80202
Phone: (303) 572-6584
Email: sebyp@gtlaw.com

PHILIP AXT
Solicitor General
600 E. Boulevard Ave., Dept. 125
Bismarck ND 58505
Phone: (701) 328-2595
Email: pjaxt@nd.gov

*Counsel for State of North Dakota*

RAÚL R. LABRADOR
Attorney General

*/s/ Michael C. Orr*
JOY M. VEGA
MICHAEL C. ORR
Deputy Attorneys General
Energy and Natural Resources Division
JOSHUA N. TURNER
Chief of Constitutional Litigation and Policy
Office of the Attorney General
700 W. State Street, 2nd Floor
P.O. Box 83720
Boise, ID 83720
Phone: (208) 334-2400
Email: joy.vega@ag.idaho.gov
Email: michael.orr@ag.idaho.gov
Email: josh.turner@ag.idaho.gov

*Counsel for State of Idaho*

AUSTIN KNUDSEN
Attorney General

*/s/ Christian B. Corrigan*
CHRISTIAN B. CORRIGAN
Solicitor General
PETER M. TORSTENSEN, JR.
Deputy Solicitor General
Montana Department of Justice
215 N. Sanders Street
Helena, MT 59601
Phone: (406) 444-2707
Email: Christian.Corrigan@mt.gov
Email: Peter.Torstensen@mt.gov

*Counsel for State of Montana*

15

## CERTIFICATE OF SERVICE

I certify that on this 31st day of July 2024, I electronically filed the foregoing with the

Clerk of the U.S. District Court for the District of North Dakota and served all parties using the

CM/ECF system.

*/s/ Paul M. Seby*