UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| THE STATE OF NORTH DAKOTA, *et al.*,<br><br>　　Plaintiffs,<br><br>v.<br><br>THE UNITED STATES DEPARTMENT OF INTERIOR, *et al.*,<br><br>　　Defendants. | No. 1:24-cv-124-DMT-CRH<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER** |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER THIS CASE TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

Defendants respectfully submit this Reply in Support of their Motion to Transfer this Case to the United States District Court for the District of Utah. Transfer is warranted because it would promote judicial economy, mitigate the risk of inconsistent judgments, and ensure that all claims involving the same administrative record are reviewed in the first-filed forum with a more direct connection to the underlying issue. At a minimum, severance and transfer of the overlapping NEPA claim is warranted.

**I.　Plaintiffs Could Have Brought This Case in the District of Utah.**

The first step in the transfer analysis requires a court to determine "whether the action may have been brought in the proposed transferee district." *Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC*, 124 F. Supp. 3d 878, 883 (D. Minn. 2015) (quoting *Valspar Corp. v. Kronos Worldwide, Inc.*, 50 F. Supp. 3d 1152, 1155 (D. Minn. 2014)). Plaintiffs could have brought this case in the District of Utah because "a substantial part of property that is the subject of the action is situated" in Utah. 28 U.S.C. § 1391(e)(1)(B). The challenged Rule governs BLM's

1

management of federal public lands across the country, including in Utah where BLM manages 22.8 million acres of federal surface estate lands that are subject to the Rule. *See Utah v. Haaland*, No. 2:24-cv-00438, ECF. No. 1, ¶ 9 (D. Utah Jun. 18, 2024) (Utah Compl.). Accordingly, "a substantial part of property that is the subject of the action is situated" in Utah and venue is proper in the District of Utah.[1]  28 U.S.C. § 1391(e)(1)(B).

In arguing that venue would be improper in the District of Utah, Plaintiffs conflate their *action* (which is the relevant inquiry for venue purposes) with their alleged *injury* (which is not). The action at issue here is a facial challenge to the Rule, not a challenge to a particular application of the Rule in North Dakota (or Idaho, or Montana). *See* Compl., ECF No. 1, at 32 (alleging that the nationwide "Final Rule" is unlawful and seeking to vacate it in its entirety). Thus, the question is whether a substantial part of the property that is subject to Plaintiffs' challenge to the nationwide rule is situated in Utah. It clearly is. And Plaintiffs' citation to *Kansas v. Garland*, No. 2:24-cv-000888, ECF No. 75 (Order) (E.D. Ark. May 23, 2024), is inapposite because that case did not involve property, and thus did not implicate 28 U.S.C. § 1391(e)(1)(B).

## II. Defendants Have Demonstrated That Transfer Is Warranted.

The second step in the transfer analysis asks whether the "convenience of parties and witnesses" and "the interest of justice" favor a transfer. 28 U.S.C. § 1404(a). The convenience

---

[1] Courts routinely consider actions challenging BLM decisions governing public lands to "involve[ ] real property." *Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, No. 08-cv-05646, 2009 WL 1025606, at *3 (N.D. Cal. Apr. 14, 2009); *see also S. Utah Wilderness All. v. Lewis* (*SUWA II*), 845 F. Supp. 2d 231, 232–34 (D.D.C. 2012) (venue proper in Utah for action challenging BLM's Resource Management Plan governing management of "several million acres of public lands located in Utah" because such an action "concerns real property situated in Utah."); *see also Ferguson v. Lieurance*, 565 F. Supp. 1013, 1015 (D. Nev. 1983). Indeed, Plaintiffs support their own choice of venue on the basis that "property subject to the action is situated in the District of North Dakota." Compl. ¶ 10.

of the parties and witnesses favors transfer for the reasons described in the Memorandum in Support of Defendants' Motion to Transfer. Defs. Memo, ECF No. 5 at 9. Moreover, this factor is less relevant in an APA case like this one, which is decided on the agency's administrative record and rarely requires evidentiary hearings or the presentation of witnesses. More relevantly, the interests of justice factor, which "is considered to be the most important factor in the analysis," weighs strongly in favor of transfer. *W. Energy All. v. U.S. Dep't of the Interior*, No. 1:16-CV-112, 2016 WL 11889030, at *3 (D.N.D. Dec. 19, 2016).

Plaintiffs argue that the first-to-file rule does not apply here because this case does not involve the same parties and issues as the Utah case. But Defendants do not argue that the first-to-file rule—which is a rule of comity *requiring* transfer—applies, but rather that it is a *factor* favoring transfer under 28 U.S.C § 1404. *See Villeda v. Inland Marine Serv.*, No. 20-cv-1412 (WMW/DTS), 2021 WL 1153247, at *3 (D. Minn. Mar. 26, 2021) (finding that "although the first-to-file rule does not *require* transfer, the similarity of the cases *favors* transfer"); *see also Permian Basin Petroleum Ass'n v. Dep't of the Interior*, No. MO-14-CV-050, 2015 WL 11622492, at *4 (W.D. Tex. Feb. 26, 2015).

Plaintiffs also contend that transferring the case would not promote judicial economy because they bring four additional claims under statutes that are not implicated in the Utah case – i.e., the Federal Land Policy and Management Act ("FLPMA"), Congressional Review Act ("CRA"), Administrative Procedure Act ("APA"), and Mineral Leasing Act ("MLA"). Pls. Resp. 7-8. But there is no inherent reason why these claims—which, like the NEPA claim, are facial challenges to the Rule—would unduly complicate the proceedings in Utah. Fundamentally, both cases challenge the same nationwide rule and seek its vacatur, with the reviewing court evaluating the Rule based on the same administrative record. The District of

Utah is fully equipped to adjudicate Plaintiffs' supplementary claims. It is incontrovertible that consolidating the review of the administrative record and rendering a decision on the Rule's merits within a single court, rather than multiple jurisdictions, would substantially enhance judicial efficiency.

Furthermore, a third case contesting the Rule—initiated by various industry groups in the District of Wyoming—articulates analogous claims under NEPA, FLPMA, the CRA, and the APA. Defendants intend to move in Wyoming to also transfer that case to the District of Utah. *See American Farm Bureau Fed'n v. U.S. Dep't of the Interior*, No. 2:24-CV-136 (D. Wy. July 12, 2024). Merging this case, along with the Wyoming litigation, into the Utah proceedings would significantly advance judicial economy and mitigate the risk of inconsistent rulings. *See W. Energy All.*, 2016 WL 11889030, at *3-4 (noting the rationale for transferring cases to prevent "potential for conflicting judgments" and the inefficiency of multiple district courts addressing similar claims when a single court could adjudicate all matters). And while Plaintiffs are accurate in noting that states frequently challenge agency rulemakings across various forums, Pls. Resp. 10, that observation does not address whether the interests of justice are best served by transfer and consolidation of cases challenging the same rulemaking.

Moreover, when evaluating the relative interests of the Districts of North Dakota and Utah in this litigation, Defendants appropriately concentrated on the extent of BLM-managed lands in North Dakota as opposed to all Plaintiff States. *See* Pls. Resp. 9. In assessing the interest of justice, the pertinent comparison is between the transferor and transferee forums—in this instance, North Dakota and Utah. Utah manages 400 times more BLM surface estate than North Dakota. *See* Defs. Memo 8 (comparing 22.8 million acres of BLM lands in Utah to 58,000 acres in North Dakota). Plaintiffs attempt to narrow this substantial disparity by

4

highlighting, for instance, that BLM oversees 12 million acres of public lands in Idaho.  Pls. Resp. 9.  This observation might be relevant if Plaintiffs had filed the case in the District of Idaho, but now merely begs the question of why Plaintiffs initially filed in North Dakota rather than Idaho.  *See W. Energy All.*, 2016 WL 11889030, at *4 (noting that "the choice of North Dakota as a forum" for plaintiffs' challenges to Sage-Grouse Resource Management Plan Amendments in multiple sub-regions "is curious given that North Dakota contains only a small portion of the Sage-Grouse's habitat.").

Plaintiffs also seek to emphasize the acreage of federal mineral estates in the Plaintiff States to exaggerate North Dakota's stake in the litigation.  But as explained in Defendants' Memo, the Rule applies only where the federal government owns surface estate.  *See* Defs. Memo 8-9.  That is, it does not apply to split estates where the federal government only owns the minerals.  Notably, Plaintiffs have not attempted to contest this fact.  Moreover, Plaintiffs' vague allegations regarding adverse impacts on communitized interests, Pls. Resp. 9, misapprehend both the rule and communitization agreements.  In short, the BLM is authorized to approve a communitization agreement in order to pool leased federal tracts with other lands to provide for apportionment of production and royalties when separate tracts cannot be independently developed under state well-spacing requirements.  *See* 30 U.S.C. § 226(m).  Even assuming the existence of federal surface estate in Plaintiffs' scenario for which a conservation or mitigation lease might be issued (a significant assumption given the minimal amount of federal surface estate in North Dakota), the second significant problem with Plaintiffs' speculation is that BLM has expressly stated that it will not issue a conservation or restoration lease that is incompatible with an existing authorization.  *See* Conservation and Landscape Health Rule, 89 Fed. Reg. 40308, 40337 (May 9, 2024) ("Restoration and mitigation leases may not be issued in areas

where an existing and otherwise incompatible use is occurring; thus, they would not displace existing mineral leases or mining claims"); *see also* 43 CFR § 6102.4(a)(4).  Should BLM issue a restoration lease in that scenario, Plaintiffs cite no provision in any communitization agreement that would allow BLM to "block" development of the non-federal portions of a communitized area should the BLM mineral estate not be developed.[2]  Finally, the Rule makes clear that future decisions to implement it must comply with applicable law.  43 C.F.R. § 6101.3.  BLM would thus not issue a restoration or mitigation lease on terms that would violate the MLA.  If Plaintiffs believe that an individual leasing decision violates the MLA, that decision could be challenged when it is issued.  Thus, Plaintiffs' unfounded and unsupported speculation about the impacts of the Rule on split estates and in communitized areas does not weigh against transfer.

Therefore, the interest of justice factor strongly favors transfer, and Defendants have met their burden with respect to the second transfer prong.

### III. At a Minimum, the Court Should Sever and Transfer the NEPA Claim to the District of Utah.

As Plaintiffs note, the Court has discretion to sever and transfer a subset of the case.  *See* Pls. Resp. 12-14.  Taking this path would not alleviate the burdens on judicial economy to the same degree as would a transfer of the entire case.  Nonetheless, at a minimum, the Court should sever and transfer the overlapping NEPA claim to the District of Utah in order to minimize the risk of conflicting judgments with respect to that claim.

In conclusion, Defendants have met their burden to demonstrate that transfer to the District of Utah is warranted.

Respectfully submitted this 7th day of August, 2024.

---

[2] *See* Model Form of Communitization Agreement, BLM Manual M-3160-9, Appendix 1, Page 5 (1988), https://www.blm.gov/sites/blm.gov/files/uploads/mediacenter_blmpolicymanual3160-9.pdf.

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

*/s/ Shannon Boylan*
SHANNON BOYLAN
Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
150 M St NE
Washington, D.C. 20002
Tel: (202) 598-9584 / Fax: (202) 305-0506
shannon.boylan@usdoj.gov

LUTHER L. HAJEK
Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
999 18th St.
South Terrace – Suite 370
Denver, CO 80202
Tel: 303-844-1376 / Fax: 303-844-1350
luke.hajek@usdoj.gov

*Attorneys for Defendants*