ERIC HEIMANN
Acting United States Attorney
C. LEVI MARTIN (WY Bar #6-3781)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY  82003-0668
Tel: 307-772-2124
christopher.martin@usdoj.gov

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
LUTHER L. HAJEK
United States Department of Justice
999 18th St.
South Terrace – Suite 370
Denver, CO 80202
Tel: 303-844-1376 / Fax: 303-844-1350
luke.hajek@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| AMERICAN FARM BUREAU FEDERATION, *et al.*, | ) Case No. 1:24-cv-136-ABJ<br>) Honorable Alan B. Johnson |
| Plaintiffs, | ) |
| v. | ) **DEFENDANTS' UNOPPOSED**<br>) **MOTION TO TRANSFER** |
| U.S. DEPARTMENT OF THE INTERIOR, *et al.,* | ) |
| Defendants. | ) |

EXHIBIT 1

Defendants the U.S. Department of the Interior *et al.* respectfully move pursuant to 28 U.S.C. § 1404(a) to transfer this case to the U.S. District Court for the District of Utah. This is the third of four cases challenging the U.S. Bureau of Land Management's ("BLM") issuance of the Conservation and Landscape Health Final Rule, 89 Fed. Reg. 40,308 (May 9, 2024) (the "Rule" or "Public Lands Rule"). At the time this case was filed, multiple states, including the State of Wyoming, filed suits in other venues, namely, the District of Utah and the District of North Dakota. Subsequently, the State of Alaska filed suit in the District of Alaska. Transferring this case to the District of Utah serves the interest of justice by promoting judicial economy and avoiding the potential for conflicting judgments. The motion should be granted for all of the grounds set forth in Defendants' accompanying memorandum of points and authorities in support of the motion.

Defendants' counsel has conferred with Plaintiffs' counsel regarding this motion, and Plaintiffs do not oppose this motion and consent to the transfer of this case to the District of Utah so that it may be consolidated (either formally or informally) with the pending case filed by the States of Utah and Wyoming. Defendants and Plaintiffs request that this motion be resolved expeditiously so that this case may be heard on the same schedule as the case filed by Utah and Wyoming. In that case, Defendants anticipate that the case will proceed to merits briefing after the administrative record is filed in mid-October. Plaintiffs intend to file a short response to this motion memorializing their reasons for consenting to the requested transfer of the case to the District of Utah.

Respectfully submitted this 5th day of September 2024,

>Eric Heimann
>United States Attorney
>C. Levi Martin (WY Bar #6-3781)
>Assistant United States Attorney
>P.O. Box 668
>Cheyenne, WY  82003-0668
>Tel: 307-772-2124
>christopher.martin@usdoj.gov
>
>Todd Kim
>Assistant Attorney General
>Environment & Natural Resources Division
>Luther L. Hajek
>United States Department of Justice
>999 18th St.
>South Terrace – Suite 370
>Denver, CO 80202
>Tel: 303-844-1376 / Fax: 303-844-1350
>luke.hajek@usdoj.gov
>
>*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| AMERICAN FARM BUREAU FEDERATION, *et al.*, | ) ) ) | Case No. 1:24-cv-136-ABJ<br>Honorable Alan B. Johnson<br>Magistrate Judge Mark L. Carman |
| Plaintiffs, | ) ) | |
| v. | ) ) | **[PROPOSED] ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION TO TRANSFER** |
| U.S. DEPARTMENT OF THE INTERIOR, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

Upon consideration of Defendants' Unopposed Motion to Transfer pursuant to 28 U.S.C. § 1404(a), and finding that good cause exists for the motion to be granted, it is hereby

ORDERED that Defendants' Motion to Transfer is GRANTED; and it is further ORDERED that this case is hereby transferred to the U.S. District Court for the District of Utah.

IT IS SO ORDERED.

Dated: _____, 2024.

_____
The Honorable Alan B. Johnson
U.S. District Court Judge

Eric Heimann
Acting United States Attorney
C. Levi Martin (WY Bar #6-3781)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668
Tel: 307-772-2124
christopher.martin@usdoj.gov

Todd Kim
Assistant Attorney General
Environment & Natural Resources Division
Luther L. Hajek
United States Department of Justice
999 18th St.
South Terrace – Suite 370
Denver, CO 80202
Tel: 303-844-1376 / Fax: 303-844-1350
luke.hajek@usdoj.gov



**FILED**

*1:46 pm, 9/6/24*

**Margaret Botkins
Clerk of Court**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| AMERICAN FARM BUREAU FEDERATION, *et al.*, | Case No. 1:24-cv-136-ABJ |
| | Honorable Alan B. Johnson |
| Plaintiffs, | |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' UNOPPOSED MOTION TO TRANSFER** |
| U.S. DEPARTMENT OF THE INTERIOR, *et al.*, | |
| Defendants. | |

# INTRODUCTION

Defendants the U.S. Department of the Interior *et al.* respectfully move this Court to transfer this case to the U.S. District Court for the District of Utah. This is the third of four cases challenging the U.S. Bureau of Land Management's ("BLM") issuance of the Conservation and Landscape Health Final Rule, 89 Fed. Reg. 40,308 (May 9, 2024) (the "Rule" or "Public Lands Rule"). At the time this case was filed, multiple states, including the State of Wyoming, had filed suits in other venues, namely, the District of Utah and the District of North Dakota. Subsequently, the State of Alaska filed suit in the District of Alaska. In order to consolidate at least three of these actions in one court, Defendants previously moved to transfer the case filed in the District of North Dakota to the District of Utah and now likewise move to transfer this case to the District of Utah.

The interests of the Plaintiffs in this case—generally, industry associations—are not specific to Wyoming. Instead, the Plaintiffs allege interests in federal public land across the West. Therefore, there is no particular reason this case should be heard in this district, as opposed to any other federal district court where federal public land is located in the contiguous United States. In order to avoid burdening multiple courts with addressing similar issues and to avoid the potential for conflicting judgments, Defendants seek to transfer this case to the District of Utah where, at minimum, it would be heard alongside the case the State of Wyoming chose to file in that district.

1

**FACTUAL AND LEGAL BACKGROUND**

**I.     Public Lands Rule**

BLM promulgated the Public Lands Rule on May 9, 2024, and it became effective on June 10, 2024. 89 Fed. Reg. at 40,308. BLM manages federal public lands in accordance with the Federal Land Policy and Management Act ("FLPMA") under the principles of multiple use and sustained yield, unless otherwise directed by law. 43 U.S.C. § 1732(a); 89 Fed. Reg. at 40,308. These principles require BLM to manage public lands for a wide variety of uses, including conservation where appropriate. *See* 43 U.S.C. § 1702(c), (h); 89 Fed. Reg. at 40,313-14; *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 710 (10th Cir. 2009) ("Development is a *possible* use, which BLM must weigh against other possible uses—including conservation to protect environmental values . . . ."). BLM's success as a land manager depends on the maintenance of functioning, resilient ecosystems. 89 Fed. Reg. at 40,308. To achieve this objective, the Rule establishes a framework for protecting healthy landscapes, restoring degraded habitat and ecosystems, and making well-informed decisions based on science and data. *Id.*

The Rule does not impose any new regulatory obligations on third parties, affect any existing authorizations to use the public lands, or otherwise shift the balance of allowable uses. *See id.* at 40,333. Instead, the Rule amends BLM's regulations regarding land use planning, land health assessments, and the designation of areas of critical environmental concern ("ACEC"), and it describes a new category of leases for conservation purposes. *See* 43 C.F.R. subparts 6101-03; 43 C.F.R. § 1610.7-2 (2024).  Among other things, the Rule requires BLM to maintain inventories of "landscape intactness"[1] as a resource value. 43 C.F.R. § 6102.2(a). Subsequently,

---

[1] "Intact landscape means a relatively unfragmented landscape free of local conditions that could permanently or significantly disrupt, impair, or degrade the landscape's composition, structure, or function. Intact landscapes are large enough to maintain native biological diversity, including viable populations of wide-ranging species." 43 C.F.R. § 6101.4(j).

during the land use planning process, BLM may consider protecting such intact landscapes. *Id.* § 6102.2(b). The Rule also provides a regulatory framework for BLM to lease land under Title III of FLPMA for the purpose of conservation, and specifically for either restoration or mitigation. 43 C.F.R. § 6102.4; *see also* 43 U.S.C. § 1732(b) (authorizing BLM to grant easements, permits, leases, or licenses for use of the public lands). In addition, the Rule creates a framework for BLM to establish land health standards, assess the condition of the public lands against those standards, and take management actions to make progress toward achieving the fundamentals of land health. *See* 43 C.F.R. §§ 6103.1-6103.2.

Finally, the Rule revises the existing land use planning regulations governing the designation of ACECs. *See* 43 C.F.R. § 1610.7-2. The ACEC regulations, which have been included in the planning regulations since 1983, implement FLPMA's provision that, "[i]n the development and revision of land use plans, the [BLM] shall . . . give priority to the designation of areas of critical environmental concern." 43 U.S.C. § 1712(c)(3); *see* 48 Fed. Reg. 20,364, 20,375 (May 5, 1983). Among other things, the Rule amends the existing regulations by adding a third criterion that must be present to designate an ACEC—that, in addition to having "relevance" and "importance," the value, resource, system, or process for which the area is designated must require "special management attention" for its protection. *Id.* § 1610.7-2(d). The changes to the ACEC regulations are largely consistent with longstanding BLM policy guidance that had not been previously codified in BLM's regulations. *See* 89 Fed. Reg. at 40,312-13.

## II.     Litigation Regarding the Public Lands Rule

The Public Lands Rule has been challenged in multiple forums. On June 18, the States of Utah and Wyoming challenged the Rule in the District of Utah. *See* Compl., *Utah v. Haaland*, No. 2:24-CV-438 (D. Utah June 18, 2024), ECF No. 1 ("Utah Compl."). Plaintiffs in that case brought two claims alleging that BLM's reliance on a categorical exclusion in issuing the Rule

3

violated the National Environmental Policy Act ("NEPA"). *See* Utah Compl. ¶¶ 103-55. Those plaintiffs moved for a preliminary injunction, *see* Mot. and Mem. in Supp. of Pls.' Mot. for Stay Under 5 U.S.C. § 705 or For a Prelim. Inj., *Utah v. Haaland*, No. 2:24-cv-438 (D. Utah July 11, 2024), ECF No. 18, and that motion is now fully briefed, but the court has not yet scheduled an argument or issued a decision.

On June 21, the States of North Dakota, Idaho, and Montana challenged the Rule in the District of North Dakota. *See* Compl., *N. Dakota v. U.S. Dept. of the Interior*, No. 1:24-cv-124-DMT-CRH (D. N.D. June 21, 2024), ECF No. 1 ("N. Dakota Compl."). The plaintiffs in that case asserted violations of NEPA, FLPMA, the Congressional Review Act ("CRA"), the Administrative Procedure Act ("APA"), and the Mineral Leasing Act ("MLA"). On July 22, Defendants moved to transfer the case to the District of Utah. *See* Defs.' Mot. to Transfer this Case to the U.S. Dist. Ct. for the Dist. of Utah, *North Dakota v. U.S. Dept. of the Interior*, No. 1:24-cv-124-DMT-CRH (D. N.D. July 22, 2024), ECF No. 5. That motion remains pending.

On July 12, the Plaintiffs in this case, the American Farm Bureau Federation *et al.*, challenged the Rule in this Court. *See* Compl., ECF No. 1. Plaintiffs allege violations of FLPMA, the CRA, NEPA, and the APA.

On July 24, the State of Alaska filed suit challenging the Rule in the District of Alaska. *See* Compl., *Alaska v. Haaland*, No. 3:24-cv-161 (D. Alaska July 24, 2024), ECF No. 1 ("Alaska Compl."). Alaska asserted violations of FLPMA, the major questions doctrine, the Alaska National Interest Lands Conservation Act ("ANILCA"), and NEPA. *See id.* ¶¶ 41-123.

## STANDARD FOR A MOTION TO TRANSFER

Motions for transfer of venue are governed by 28 U.S.C. § 1404(a), which provides, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may

4

transfer any civil action to any other district or division where it might have been brought." Under the statute, courts have broad discretion to determine whether transfer from one jurisdiction to another is appropriate. *Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 567 (10th Cir. 1978).

In evaluating a motion to transfer, a court should follow a two-step analysis. First, the court determines whether the action could have been brought in the proposed transferee district. *See Cmty. Television of Utah, LLC v. Aero, Inc.*, 997 F. Supp. 2d 1191, 1205 (D. Utah 2014). In cases involving federal agencies, venue is appropriate where: "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e).

Second, if venue would be proper in the transferee forum, then the court should evaluate whether transfer is appropriate based on the convenience of the parties and witnesses and the interest of justice. *See Chrysler Credit Corp. v. County Chrysler, Inc.*, 928 F.2d 1509 (10th Cir. 1991). The analysis is case specific, and the court should consider:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id.* at 1515; *see also Emps. Mt. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010). "The 'interest of justice' is a separate element of the transfer analysis that relates to the court system's efficient administration." *Front Row Tech., LLC v. NBA Media Ventures, LLC*, 163 F. Supp. 3d 938, 990 (D. N.M. 2016) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 626-67

5

(1964)). Where related cases are brought in different districts, the interest of justice favors transfer to promote judicial economy. *See Quorum Health Res., LLC v. Lexington Ins. Co.*, Civ. No. 11-374-MV/LAM, 2012 WL 769744, at *4 (D. N.M. Mar. 7, 2012).

## ARGUMENT

**I.        Plaintiffs Could Have Filed Suit in the District of Utah**

The first step to the inquiry is to ask whether the District of Utah would be a proper venue, and it would be. Under 28 U.S.C. § 1391(e), a civil action against an official or agency of the United States may be brought in any judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(e)(1)(B). The Rule at issue here governs federal public land across the West. *See* 89 Fed. Reg. at 40,309 ("The BLM manages approximately 245 million acres of public land . . . ."). Approximately 22.8 million acres of federal public land is in Utah. Utah Compl. ¶ 9. Accordingly, "a substantial part of property that is the subject of the action is situated" in Utah, and therefore venue is proper in the District of Utah.[2] 28 U.S.C. § 1391(e)(1)(B). Alternatively, under 28 U.S.C. § 1391(e)(C), venue is proper in the District of Utah based on the residence of at least one of the Plaintiffs, the Garkane Energy Coop. *See* https://garkaneenergy.com/ (last visited Aug. 28, 2024) (listing Garkane's address as: 120 W. 300 S., Loa, UT 84747; *see also* Decl. of Daniel McClendon on Behalf of Garkane Energy Coop. ¶ 3, ("Garkane is a member-owned, not-for-profit electric cooperative that provides electrical

---

[2] Courts routinely consider actions challenging BLM decisions governing public lands to "involve[ ] real property." *Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, No. 08-cv-05646, 2009 WL 1025606, at *3 (N.D. Cal. Apr. 14, 2009); *see also S. Utah Wilderness All. v. Lewis* (*SUWA II*), 845 F. Supp. 2d 231, 232–34 (D.D.C. 2012) (venue proper in Utah for action challenging BLM's Resource Management Plan governing management of "several million acres of public lands located in Utah" because such an action "concerns real property situated in Utah."); *see also Ferguson v. Lieurance*, 565 F. Supp. 1013, 1015 (D. Nev. 1983).

services across 16,000 square miles in six counties in South-Central Utah and two counties in North-Central Arizona."), ECF No. 1 at 138.

## II. Transferring the Case to the District of Utah Would Serve the Interest of Justice

The interest of justice would be served by transferring this case to the District of Utah. In evaluating the interest of justice, the Court should consider "the court system's efficient administration." *Resource Assoc. Grant Writing & Evaluation Servs., Inc. v. Southampton Union Free School Dist.*, 193 F. Supp. 3d 1200, 1227 (D. N.M. 2016) (citing *Van Dusen*, 376 U.S. at 626-27). "In some circumstances, '[t]he interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result.'" *Id.* (quoting *Research Automation, Inc. v. Schrader-Bridgeport, Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010)). This is such a case because allowing two cases challenging the Rule to proceed separately in two different courts would "lead[] to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960).

First, transferring this case to the District of Utah would serve judicial economy. Both this case and the existing Utah case challenge the Public Lands Rule, and both challenge the Rule under NEPA. *See* Compl. ¶ 7, 159-70, 181; Utah Compl. ¶ 6, 103-55. Plaintiffs and the Utah Plaintiffs both argue that BLM's reliance on a categorical exclusion violated NEPA, and their grounds for that argument are largely the same. *See id.* Therefore, there is direct overlap between the two cases. Moreover, both cases—as cases brought pursuant to the judicial review provisions of the APA, 5 U.S.C. §§ 701-06—will be decided based on the administrative record prepared by BLM. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985); *see also* D. Wyo. L. Civ. R. 83.6(b). The record for the Rule will be largely the same, if not identical, in the two cases. If the two cases were to proceed separately, Defendants would need to file the record

7

in two different courts and draft and file summary judgment briefs in two different courts. The interest of judicial economy weighs heavily against such inefficiency. *See Quorum Health Res.*, 2012 WL 769744, at *4-5 (transferring case to avoid duplicative litigation from proceeding in two separate courts); *Davis v. Dell, Inc.*, No. CIV-07-1401-W, 2008 WL 11338158, at *6 (W.D. Ok. Oct. 14, 2008) (transferring case "given the substantially identical judicial proceedings" in two different districts).

Second, the interest of justice strongly favors a single court hearing similar claims regarding the same Rule to avoid the risk of conflicting judgments. *See Feller v. Brock*, 802 F.2d 722, 727-28 (4th Cir. 1986) ("Prudence requires that whenever possible, coordinate courts should avoid issuing conflicting orders."); *see also Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979) (recognizing the need to "avoid the embarrassment of conflicting judgments"). The potential for conflicting judgment creates a risk that a party may have "to choose between coordinate courts and to knowingly violate an outstanding court order," and thus "run a serious risk of contempt sanctions." *Feller*, 802 F.2d at 727 (citations omitted); *see also Ariz. and N. Mexico Coal. of Counties for Econ. Growth v. U.S. Fish and Wildlife Serv.*, Civ. No. 15-125 WJ/WPL, 2015 WL 9917341, at *7 (D.N.M. Apr. 23, 2015) ("[T]he compelling considerations of judicial efficiency and avoidance of inconsistent judicial results strongly favors transfer of this case to [another district where a similar case was pending]"). *W. Energy All. v. U.S. Dept. of the Interior*, No. 1:16-cv-112, 2016 WL 11889030, at *4 (D.N.D. Dec. 19, 2016) ("[T]he interests of justice strongly favor a single court hearing similar claims regarding the same [resource management plan amendments] to avoid the risk of conflicting judgments"). This risk is heightened in this case because the State of Wyoming is litigating its own case in the District of Utah—yet, it would necessarily be subject to a ruling in this district that applied

8

within the District of Wyoming. Denying transfer would also needlessly contribute to the congestion of the federal courts. *See W. Energy All.*, 2016 WL 11889030, at *4 ("In choosing to file in North Dakota, the Plaintiffs contributed to the proliferation of cases challenging the Plan Amendment in multiple federal courts.").

Third, there is no compelling interest in having this case heard in Wyoming. Several of the entities are national entities, whose interests extend to all federal public lands across the West or large portions of it. *See, e.g.*, Decl. of Shelby Hagenauer (American Farm Bureau Federation ("AFBF")) ¶ 9 ("AFBF's members rely on federal lands in the American West to operate and sustain their businesses."), ECF No. 1 at 59; Decl. of Carolyn L. McIntosh (American Exploration & Mining Association ("AEMA")) (asserting an interest in 19 mostly western states where mining claims may be located, including Utah), ECF No. 1 at 64. Some of the Plaintiffs, such as the Wyoming Farm Bureau Federation, operate solely within Wyoming. *See* Decl. of Ken Hamilton ¶ 3, ECF No. 1 at 106-07. Yet other Plaintiffs or their members, such as the Garkane Energy Cooperative and the Graham County Electric Cooperative, operate in one or two states other than Wyoming. *See* Decl. of Daniel McClendon on Behalf of Garkane Energy Coop. ¶ 3 (electric cooperative operating in Utah and Arizona), ECF No. 1 at 138; Decl. of Thad S. Ballard on Behalf of Wells Rural Electric Cooperative ¶ 3 (electric cooperative operating in Nevada and Utah), ECF No. 1 at 143. Given the myriad interests represented in Plaintiffs' lawsuit, the fact that some of the various Plaintiffs can claim a connection to Wyoming does not favor litigating the case in Wyoming, as opposed to Utah. To the contrary, because several Plaintiffs have ties to both Wyoming and Utah, it only makes sense for them to litigate their case in the District of Utah, where the States of Wyoming and Utah are already litigating similar claims.

9

### III. The Convenience of Parties and Witnesses Is Not a Significant Factor

The convenience factor does not strongly favor one forum over another because the case will be resolved, as APA cases generally are, through merits briefing based on the administrative record. *See Fla. Power & Light*, 470 U.S. at 743. In such cases, the convenience of the parties and witnesses is largely irrelevant. *WildEarth Guardians v. U.S. Fish & Wildlife Serv.*, No. 12-CV-3085-AP, 2013 WL 136204, at *5 (D. Colo. Jan. 9, 2013). Further, both the District of Wyoming and the District of Utah are in the Tenth Circuit and follow the procedures for briefing in APA cases set forth in *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1579-80 (10th Cir. 1994); *see also* D. Wyo. L. Civ. R. 83.6(b); D. Utah L. Civ. R. 7-4(c)-(d). Therefore, it will be no more burdensome for Plaintiffs to brief their case in the District of Utah than it would be in this district.

### CONCLUSION

In sum, the interest of justice weighs heavily in favor of transfer. A case challenging the very same rule, brought by the State of Wyoming, is already being litigated in the District of Utah. Transferring this case to the same district will serve the interest of justice by promoting judicial economy and avoiding the potential for conflicting judgments. Therefore, the Court should grant the motion to transfer.

Respectfully submitted this 5th day of September 2024,

                                                          ERIC HEIMANN
                                                          Acting United States Attorney
                                                          C. LEVI MARTIN (WY Bar #6-3781)
                                                          Assistant United States Attorney
                                                          P.O. Box 668
                                                          Cheyenne, WY 82003-0668
                                                          Tel: 307-772-2124
                                                          christopher.martin@usdoj.gov

                                                          TODD KIM
                                                          Assistant Attorney General

        Environment & Natural Resources Division
        LUTHER L. HAJEK
        United States Department of Justice
        999 18th St.
        South Terrace – Suite 370
        Denver, CO 80202
        Tel: 303-844-1376 / Fax: 303-844-1350
        luke.hajek@usdoj.gov

        *Attorneys for Defendants*